## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:11-cr-292 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| OMAR SIERRE FOLK, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

### June 22, 2018

Defendant Omar Sierre Folk ("Folk") has filed the following motions: a motion (Doc. 179) for an evidentiary hearing; a motion (Doc. 180) to amend judgment pursuant to Federal Rule of Civil Procedure 59(e) and for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(1); a motion (Doc. 183) to amend and supplement Folk's previously filed motion for relief under 28 U.S.C. § 2255 ("2255 motion"); another motion (Doc. 184) to amend and supplement his 2255 motion; a motion (Doc. 186) "under status quo in light of motion's after Doc. 181 clerical error"; a motion (Doc. 189) for an order to show cause; and a motion (Doc. 190) for judgment on the pleadings. For the following reasons, these motions will be denied.

# I. __BACKGROUND__[1]

We previously explained the complicated procedural history of this matter in our February 16, 2018 memorandum, but to understand the instant motions the background bears repeating:

> On August 14, 2012, a jury convicted Folk of various drug and firearms offenses. (Docs. 82, 84). Shortly thereafter, he moved for a new trial or alternatively to vacate judgment. (Doc. 87). The court denied that post-trial motion. (Doc. 90).

> Folk was found to be a career offender under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), and his resultant sentencing Guideline range was 420 months to life. (Presentence Investigation Report ("PSR") ¶¶ 29-31, 79). On September 26, 2013, the court granted a significant downward variance and sentenced Folk to 264 months' imprisonment. (Doc. 134 at 28-29; Doc. 126).

> Folk appealed the denial of a motion for a mistrial made during trial, as well as the denial of his post-trial motion for a new trial. (Doc. 127); *United States v. Folk*, 577 F. App'x 106, 106 (3d Cir. 2014) (nonprecedential). On September 17, 2014, the Third Circuit affirmed the judgment. *Folk*, 577 F. App'x at 107. The Supreme Court of the United States denied Folk's petition for a writ of certiorari on October 5, 2015. *Folk v. United States*, 136 S. Ct. 161 (2015) (mem).

> On June 5, 2016, Folk—through counsel from the Federal Public Defender's Office—filed his first motion under 28 U.S.C. § 2255 based on the recent Supreme Court case of *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding the residual clause of the Armed Career Criminal Act ("ACCA") unconstitutionally void for vagueness). (Doc. 139). It appears as though the Federal Public Defender, appointed under a Middle District standing order

---

[1] On February 5, 2018, this case was reassigned from the Honorable William W. Caldwell to the undersigned due to Judge Caldwell's retirement.

(*see* Doc. 141 (M.D. Pa. Standing Order 15-06)), identified Folk as a potential candidate for relief under *Johnson* and filed the 2255 motion on his behalf pursuant to the standing order. Evidently, due to the looming deadline established by the gatekeeping requirements of 28 U.S.C. § 2255(f) and *Johnson*'s date of decision of June 26, 2015,[2] the Federal Public Defender's policy was to file the 2255 motion on the defendant's behalf and subsequently communicate with the defendant, withdrawing the motion if the defendant did not want it filed. (Doc. 143 at 2). This practice appears to have been followed in the instant case. (*Id.* at 2-3).

On June 8, 2016, the Federal Public Defender moved to appoint counsel from the Criminal Justice Act ("CJA") panel to represent Folk in his *Johnson*-based 2255 motion. (Doc. 143). The request for appointment of CJA counsel was the result of a conflict of interest with Folk stemming from a civil case he filed against the Federal Public Defender's Office. (*Id.* at 3). The court granted this motion the following day, and CJA counsel was appointed. (Doc. 144; Doc. 149 at 1).

On August 30, 2016, the court issued an order for the Government to show cause why relief should not be granted on Folk's 2255 motion. (Doc. 145). Because his *Johnson* claim implicated the residual clause of the career offender portion of the Guidelines, *see* U.S.S.G. § 4B1.2(a)(2) (2013), rather than the residual clause of the ACCA, the Government moved to stay the case in light of relevant cases pending in the Third Circuit as well as the Supreme Court's grant of certiorari in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015) (per curiam), *cert. granted*, 136 S. Ct. 2510 (2016) (mem.) (granting certiorari to determine, *inter alia*, whether advisory Guideline[s'] residual clause found in U.S.S.G. § 4B1.2(a)(2) was void for vagueness

---

[2] 28 U.S.C. § 2255(f)(3) provides for a one-year statute of limitations that begins to run "on the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" For most defendants who had not filed a previous 2255 motion, and whose judgments of conviction became final more than a year prior to the *Johnson* decision, Section 2255(f)(3) provided the only means to file a timely initial 2255 motion to assert a *Johnson* claim.

after *Johnson*). (Doc. 147 at 2). Folk's counsel concurred in the stay. (*Id.* at 3). On September 19, 2016, the court granted the unopposed motion to stay the case in light of the grant of certiorari in *Beckles*. (Doc. 148).

After the September 19, 2016 imposition of a stay, no entries appear on the docket until February 27, 2017, when Folk's CJA counsel filed an unopposed motion to withdraw as counsel, (Doc. 149). In her motion to withdraw, which contained little detail, CJA counsel cited an inability to communicate effectively with Folk and his explicit request that she withdraw from his case. (*Id.* at 2). The court granted the motion to withdraw on April 7, 2017, noting that Folk would proceed *pro se* in the post-conviction matters. (Doc. 153).

On April 3, 2017, four days prior to the court granting CJA counsel's motion to withdraw, Folk filed a *pro se* "motion to amend under 15(c)(2)(B)[3] in regards to original 2255." (Doc. 151). Within this motion to amend his initial 2255 motion, Folk referenced a "motion [for] leave [to] amend under [Rule] 15(a)" that he purportedly filed in October of 2016. (*Id.* at 1). As explained above, however, no motion to amend—or any other motion or document—appears on this case's docket in October of 2016. Folk also mentioned this October 2016 motion to "amend under 15(a)" in his reply brief (Doc. 158), averring that the motion was deposited in the prison mail system on October 5, 2016.[4] (Doc. 158 at 1, 2).

Importantly, Folk attached, as "Exhibit (A)" to his reply brief, the cover page of this October 5, 2016 *pro se* motion to

---

[3] The court construed Folk's motion to amend "under Rule 15(c)(2)(B)" as a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), as Rule 15 does not contain a subsection "(c)(2)(B)." (*See* Doc. 161 at 4 n.2); Fed. R. Civ. P. 15(c).

[4] This mailed-by date is important. Under the prisoner mailbox rule, documents placed in the prison mailbox system are deemed filed on the date they are mailed, not the date they are received by the court. *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011). Moreover, as will be discussed in more detail below, October 5, 2016, was the deadline for Folk to raise claims for relief in an initial 2255 motion pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(1).

"amend under 15(a)," which contains a "FILED" time-stamp of October 7, 2016, and initials of a staff member from the clerk's office. (*See* Doc. 158-1 at 1). Upon investigation, it appears that—without this court's knowledge—the clerk's office had initially stamped the motion to "amend under 15(a)" as filed, but instead of filing it on the docket, mailed the *pro se* motion back to Folk after discovering that he was represented by CJA counsel.

In his reply brief, Folk further averred that he explicitly asked his CJA counsel to raise other issues for relief, beyond the *Johnson* claim, within the one-year statute of limitations set forth in Section 2255(f)(1). (*See* Doc. 158 at 1). CJA counsel corroborated this averment in her telephonic communications with this court prior to her withdrawal from the case, stating that Folk had wanted to raise additional claims but that she was having significant difficulty deciphering what those claims entailed.

On August 2, 2017, the court permitted Folk to file the entire October 5, 2016 motion to "amend under 15(a)" so that it could be properly considered. (*See* Doc. 162). . . . One week later, Folk filed the full October 5, 2016 motion as requested. (*See* Doc. 163).

On August 23, 2017, the Government filed its brief in opposition to Folk's motion to "amend under 15(a)." (Doc. 166). The Government appear[ed] to concede that leave to amend should be granted, but challenge[d] the merits of the additional claims raised in the motion. (*Id.* at 2-19).

(Doc. 177 at 1-7).

While Folk's initial motion to "amend under 15(a)" was under

consideration, he filed two additional motions to amend his 2255 motion. The

first additional motion to amend was filed on August 17, 2017, and the second

was filed on November 3, 2017. (Docs. 165, 169). Then, on November 30,

2017, Folk filed a motion (Doc. 170) to appoint counsel, as well as a motion (Doc. 171) for an evidentiary hearing.

On February 16, 2018, we issued a memorandum and order addressing Folk's outstanding motions. (Docs. 177, 178). We noted that because Folk's initial motion to "amend under 15(a)" was filed on October 5, 2016, exactly one year from the date his judgment of conviction became final, it was filed within the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1). (Doc. 177 at 8-9). We also found that amendment of his 2255 motion would cause little, if any, prejudice to the government. (*Id.*) Thus, we granted his initial motion to amend and treated the seven claims raised therein as part of his original 2255 motion. However, we ultimately denied the 2255 motion in its entirety, rejecting the *Johnson*-based claim asserted in the original motion, as well as the seven additional claims raised by amendment. (*See id.* at 9-21). Additionally, we denied Folk's August 17, 2017 and November 3, 2017 motions to amend, his November 30, 2017 motion to appoint counsel, and his November 30, 2017 motion for an evidentiary hearing. (*See id.* at 21-24).

Since the issuance of our February 16, 2018 decision, Folk has filed eight additional motions. We have reviewed the first seven of these motions, and for the reasons set forth below, find that none has merit. We will also request clarification from Folk regarding his eighth motion, "Movant's File a Motion

6

Upon FRP Fine Inregards [sic] to Doc. 172 Still Not Answer Under U.S.S.G. 5E1.2(a) and 5E1.2(d)" (Doc. 191), as it is completely incomprehensible.

## II. DISCUSSION

As with Folk's previous *pro se* filings, all of the instant motions are extremely difficult to decipher. Because the first three motions appear to raise similar arguments, we will address them together.

### A. February 26, 2018 Motion for an Evidentiary Hearing; March 1, 2018 Motion to Alter Judgment and for Reconsideration; and March 13, 2018 Motion to Amend and Supplement 2255 Motion

In these three motions, it appears that the crux of Folk's argument is that he was inappropriately designated a career offender under the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") and that his CJA counsel, Attorney Jennifer Wilson ("Attorney Wilson"), was ineffective for failing to raise this argument in post-conviction proceedings. Also, in his March 1, 2018 Motion to Alter Judgment and for Reconsideration, Folk contends that Attorney Wilson was ineffective for failing to oppose the government's motion to stay his 2255 proceedings.

Initially, we note that both Federal Rule of Civil Procedure 59(e) and Rule 60(b) impose extremely high bars for obtaining relief. Moreover, in order to assert a new claim for relief in an out-of-time motion to amend a Section 2255 filing, the movant must be able to show that the claim relates back to the original

2255 motion.  *See Mayle v. Felix*, 545 U.S. 644, 662-64 (2005).  Nonetheless, because Folk has been attempting to assert these career offender challenges in one form or another since the initial 2255 motion was filed without his consultation, we will address the merits of Folk's arguments to finally put to rest his claim that he was wrongfully sentenced as a career offender.

### 1. *Career Offender Designation Under the Guidelines*

A defendant is considered a career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).[5]  At the time of Folk's sentencing, the Guidelines defined "crime of violence" as any offense under state or federal law that is punishable by a term of imprisonment exceeding one year, and which either:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another.

---

[5] Unless otherwise specified, all references to the Guidelines Manual reflect the 2012 edition, as this was the manual utilized for Folk's PSR and sentencing.  (*See* PSR ¶ 17).

U.S.S.G. § 4B1.2(a).[6]

It is undisputed that Folk was at least eighteen years old when he committed the instant offense of conviction and that the offense qualified as a "controlled substance offense." The only career offender element in question is whether Folk had two qualifying predicate convictions.

At sentencing, the parties identified four prior Pennsylvania state-court convictions that could potentially qualify as career offender crimes of violence. They included two robbery convictions from 2001, a 2003 simple assault conviction, and a 2003 terroristic threats conviction. (*See* Doc. 134 at 3-9; PSR ¶¶ 42-44).

Because the 2001 robbery convictions involved two robberies that purportedly occurred within five minutes and 150 feet of each other, Folk's counsel argued at sentencing that the robberies could not be treated as two separate episodes for purposes of counting predicate offenses. (Doc. 134 at 3-4). Folk's counsel, however, appeared to concede that the simple assault and terroristic threats convictions, in light of then-current Third Circuit law, qualified as crimes of violence. (*Id.* at 7-9). Thus, Folk's counsel conceded, and Judge Caldwell agreed, that Folk qualified as a career offender under the Guidelines

---

[6] Section 4B1.2 was amended in 2016 to, *inter alia*, remove the "residual clause," the final clause in Section 4B1.2(a)(2) stating "or otherwise involves conduct that presents a serious risk of physical injury to another." *See* U.S.S.G. app. C amend. 798 (Supp. Nov. 1, 2016). This amendment does not affect the analysis of the instant motions.

regardless of whether the two robberies could be treated as separate episodes. (*Id.*)

Folk contends that he was wrongfully designated a career offender. He argues that crimes under Pennsylvania's robbery, simple assault, and terroristic threats statutes do not qualify as federally defined "crimes of violence," and, therefore, do not constitute predicate offenses under the career offender Guideline.

In determining whether a prior conviction is a federally defined "crime of violence," the court typically employs one of two methods: the "categorical approach," or the "modified categorical approach." *See United States v. Harris*, 205 F. Supp. 3d 651, 660 (M.D. Pa. 2016). When "a statute sets out a single (or 'indivisible') set of elements to define a single crime," a sentencing court must employ the "categorical approach" to determine whether the crime constitutes a "crime of violence." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). In applying the categorical approach, a court "may look only to the elements of a crime, not 'to the particular facts underlying those convictions.'" *United States v. Abbott*, 748 F.3d 154, 157 (3d Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). Under the categorical approach, a court "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood."

*United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014) (quoting *Descamps*, 570 U.S. at 257).

A prior conviction qualifies as a predicate for purposes of career offender designation "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* In an ordinary case employing the categorical approach, "a court simply asks 'whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense.'" *Id.* (quoting *United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005)). "If the state statute 'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." *Id*. (citing *Descamps*, 570 U.S. at 261).

If a statute, however, is "'divisible" in that it "comprises multiple, alternative versions of the same crime," a sentencing court must employ the "modified categorical approach." *Descamps*, 570 U.S. at 261-62. Under the modified categorical approach, "a sentencing court may look to a limited class of extra-statutory documents to determine which version of the offense was the basis of the conviction." *Brown*, 765 F.3d at 189 (citing *Descamps*, 570 U.S. at 261-62). The court, however, should "apply the modified approach to a divisible statute and examine extra-statutory documents only when 'at least one, but not

all' of the separate versions of the offense is, by its elements, a predicate offense." *Id.* at 191 (citing *Descamps*, 570 U.S. at 264).

If a conviction resulted from a jury trial, the sentencing court may consult "the charging paper and jury instructions." *Id.* at 189 (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). On the other hand, if the conviction followed a guilty plea, a court may consult "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 189-90 (quoting *Shepard v. United States*, 544 U.S. 12, 16 (2005)). After determining which version of the offense was the basis of a defendant's conviction, a court "can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Mathis*, 136 S. Ct. at 2249.

### a. Folk's Terroristic Threats Conviction

On November 3, 2003, Folk pleaded guilty to making terroristic threats in violation of 18 PA. CONS. STAT. § 2706. That statute provides, in relevant part:

(a) A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 PA. CONS. STAT. § 2706(a) (2003).

Folk cites *United States v. Brown*, 765 F.3d 185 (3d Cir. 2014),[7] in support of his argument that his terroristic threats conviction does not qualify as a career offender predicate. In *Brown*, the Third Circuit considered whether a conviction under Pennsylvania's terroristic threats statute could constitute a federally defined "crime of violence" for purposes of the career offender Guideline. *See generally id.* The court answered this question in the negative. *Id.*

The 2014 *Brown* decision thus dictates that a terroristic threats conviction under 18 PA. CONS. STAT. § 2706 cannot qualify as a career offender predicate, regardless of the subsection under which a defendant was convicted. Folk's career offender designation, however, was not solely dependent upon his prior terroristic threats conviction.

---

[7] We are cognizant that *Brown* was not decided until September 2, 2014, eleven months *after* Folk was sentenced as a career offender. Nevertheless, because the Third Circuit did not decide Folk's direct appeal until September 17, 2014, we assume the *Brown* holding would have been available to Folk had his career offender designation been challenged on direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final[.]"). We also agree with Folk that, as the *Brown* court recognized, binding Supreme Court precedent in *Descamps v. United States*, 570 U.S. 254 (2013), was available at sentencing to argue that a conviction under Pennsylvania's terroristic threats statute could not qualify as a career offender predicate.

### b. **Folk's Simple Assault Conviction**

On November 3, 2003, Folk also pleaded guilty to simple assault in violation of 18 PA. CONS. STAT. § 2701. Section 2701 provides, in pertinent part, that a person is guilty of simple assault if he:

> (1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another;

> (2) negligently causes bodily injury to another with a deadly weapon;

> (3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

> (4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer during the course of an arrest or any search of the person.

18 PA. CONS. STAT. § 2701(a) (2002). This statute is divisible, and requires the application of the modified categorical approach. *See United States v. Doe*, 810 F.3d 132, 147 (3d Cir. 2015) ("[Pennsylvania] [s]imple assault is not categorically a crime of violence under the Sentencing Guidelines[.]").

According to the pertinent charging document and transcript of Folk's guilty plea colloquy, Folk's 2003 conviction for simple assault involved a violation of subsection (a)(3) of Pennsylvania's simple assault statute. (PSR Ex. 2 at 1, 17-19). In *Singh v. Gonzales*, 432 F.3d 533 (3d Cir. 2006), the Third Circuit held that a violation of § 2701(a)(3) constitutes a "crime of violence" as

14

that term is defined in 18 U.S.C. § 16(a). The court of appeals reasoned as follows:

> [Section] 2701(a)(3) is a crime of violence within 18 U.S.C. § 16(a) because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Under Pennsylvania law, simple assault as set forth in § 2701(a)(3) is a specific intent crime. The language of (a)(3) dictates this result: the word "attempt" necessarily involves a mental state of specific intent. . . . Furthermore, the requirement . . . that the elements of a "crime of violence" include "use, attempted use, or threatened use of physical force" plainly encompasses the term "physical menace" as in § 2701(a)(3). Under Pennsylvania law, "physical menace" requires some physical act by the perpetrator intended to cause "fear of imminent serious bodily injury" in the victim. . . . . "Physical menace" refers to physical acts committed to threaten another with corporeal harm. . . . We cannot reasonably conceive of a situation wherein such an act of "physical menace," intended to place another in fear of imminent serious bodily injury, would not, at the very least, constitute the attempted or threatened use of physical force contemplated by 18 U.S.C. § 16(a).

*Singh*, 432 F.3d at 539-40.

Although *Singh* specifically discussed the definition of "crime of violence" set forth in 18 U.S.C. § 16(a), *Singh*'s holding is applicable to cases involving the identically worded "elements clause" of the career offender definition of crime of violence. *See, e.g.*, *United States v. Jones*, 552 F. App'x 185, 187-88 (3d Cir. 2014) (nonprecedential) (recognizing Third Circuit's holding in *Singh* and noting that "[it cannot] be disputed that [a § 2701(a)(3)] offense is a 'crime of violence' as that term is defined in the Sentencing Guidelines"); *United States v. Jackson*,

No. CV 16-602, CR 10-235, 2016 WL 6839467, at *2 (W.D. Pa. Nov. 21, 2016) ("Although *Singh* addressed 18 U.S.C. § 16(a), the definition of 'crime of violence' in Section 4B1.2(a)(1) [of the Guidelines] mirrors that in Section 16(a), and thus authority interpreting one is generally applied to the other, unless pertinent distinctions—none of which are present here—are present.").

In light of the foregoing, Folk's 2003 conviction for simple assault under 18 PA. CONS. STAT. § 2701(a)(3) is properly considered a crime of violence for purposes of the career offender Guideline. Folk, therefore, would need one more qualifying predicate conviction to be properly designated a career offender.

### c. **Folk's Robbery Convictions**

We lastly turn to Folk's prior robbery convictions. On January 8, 2001, Folk pleaded guilty in state court to two separate counts of robbery. At all pertinent times, Pennsylvania's robbery statute provided, in relevant part, as follows:

> (1)  A person is guilty of robbery if, in the course of committing a theft, he:
>
> > (i) inflicts serious bodily injury upon another;
> >
> > (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
> >
> > (iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

18 PA. CONS. STAT. § 3701(a) (2000).  Under this statute, a robbery under subsection (a)(1)(iv) is designated as a felony of the second degree, a robbery under subsection (a)(1)(v) is designated as a felony of the third degree, and robberies under all other subsections are designated as felonies of the first degree. *Id.* § 3701(b).

Acknowledging the divisibility of Pennsylvania's robbery statute, this court has recently held that convictions under subsections (a)(1)(i), (a)(1)(ii), and (a)(1)(iv) qualify as violent felonies.  *See United States v. Harris*, 205 F. Supp. 3d 651, 673 (M.D. Pa. 2016) (Caldwell, J.).  On the other hand, convictions under subsections (a)(1)(iii) and (a)(1)(v) do not qualify as violent felonies.  *Id.* And although *Harris* concerned the definition of "violent felony" in the ACCA, jurisprudence regarding "violent felony" under the ACCA has consistently been applied to cases involving the career offender Guideline's definition of "crime of violence."  *See Brown*, 765 F.3d at 189 n.2 (citation omitted); *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence

under the Sentencing Guidelines that authority interpreting one is generally applied to the other[.]" (footnote omitted)).

Because Pennsylvania's robbery statute is divisible, we must apply the modified categorical approach to Folk's prior robbery convictions. Based on a review of the pertinent *Shepard* documents, it appears that Folk's January 8, 2001 robbery convictions arose out of two separate robberies, both of which Folk committed on July 2, 2000. (PSR Ex. 1 at 5-6).

According to the transcript of Folk's January 8, 2001 guilty plea colloquy, the first robbery occurred when Folk simply grabbed a silver chain and cross off the victim's neck, and, therefore, the offense constituted a robbery by "force, however slight." (PSR Ex. 1 at 6). Consequently, the offense was a violation of 18 PA. CONS. STAT. § 3701(a)(1)(v). *Harris* recognized that a conviction under subsection (a)(1)(v) does not qualify as a violent felony under the ACCA. 205 F. Supp. 3d at 673. Accordingly, because this particular robbery conviction does not qualify as an ACCA violent felony, it cannot be considered a predicate crime of violence for purposes of career offender designation. *Brown*, 765 F.3d at 189 n.2; *Hopkins*, 577 F.3d at 511.

As for the second July 2, 2000 robbery, the charging information explained the incident as follows:

> [Folk] . . . in the course of committing a theft . . . inflicted bodily injury upon the victim, and put him in fear of immediate serious

> bodily injury, by grabbing the victim by the throat and asking the victim if he would like to feel a slug in his throat in the course of taking money from the victim did knock him to the ground and then kick him about the head area, resulting in injury to the victim . . . .

(PSR Ex. 1 at 10).  Importantly, the charging information also indicated that the robbery was a felony of the *second degree*.  (*Id.*)

Based on the foregoing description of Folk's second robbery, it is clear that this conviction fell under subsection (a)(1)(iv).  Indeed, an offense under subsection (a)(1)(iv) was the *only* robbery offense designated as a second-degree felony per the Pennsylvania robbery statute in effect at the time of Folk's conviction.  18 PA. CONS. STAT. § 3701(b) (2000).

*Harris* held that convictions under subsection (a)(1)(iv) qualify as federally defined violent felonies.  205 F. Supp. 3d at 673.  Consequently, Folk's July 2, 2000 robbery—whether determined to be one event or two—counts as a predicate crime of violence for purposes of his career offender designation.  *See Brown*, 765 F.3d at 189 n.2; *Hopkins*, 577 F.3d at 511.

In sum, it appears that Folk is correct that several of his prior Pennsylvania crimes—the offense of robbery by force however slight under subsection (a)(1)(v), and the offense of terroristic threats—do not qualify as predicate crimes of violence under the Guidelines' career offender provision.  Unfortunately for Folk, two of his prior convictions *do* qualify as crimes of violence—namely, the

simple assault by physical menace under 18 PA. CONS. STAT. § 2701(a)(3) (2002), and the robbery conviction under 18 PA. CONS. STAT. § 3701(a)(1)(iv) (2000). Consequently, since a defendant need only have two predicate crimes of violence to meet the third element of the career offender definition, and the other two elements are not in dispute, Folk was properly classified as a career offender at sentencing.[8]

### 2. CJA Counsel's Failure to Oppose Government's Motion to Stay

In his March 1, 2018 Motion to Amend Judgment and for Reconsideration, Folk also contends that Attorney Wilson was ineffective for failing to oppose the government's motion to stay his 2255 proceedings. Folk's reasoning behind this ineffectiveness claim is unclear. It appears that Folk may be attempting to raise one of two arguments, both of which are meritless.

First, Folk may be attempting to argue that counsel should have opposed the stay because at the time the government requested the stay, there was Third Circuit precedent holding that the residual clause of the career offender Guideline was unconstitutionally vague. *See United States v. Calabretta*, 831 F.3d 128 (3d Cir. 2016), *abrogated in part by Beckles v. United States*, 137 S. Ct. 886 (2017). The problem with this argument is that regardless of whether Attorney Wilson

---

[8] Because Folk qualifies as a career offender, his claim that Attorney Wilson was ineffective for failing to properly challenge his career offender designation necessarily fails because Folk cannot establish prejudice under *Strickland*.

opposed the stay, the case would have undoubtedly been stayed while the Supreme Court of the United States was considering the constitutionality of the career offender Guideline's residual clause in *Beckles*.

It has long been recognized that "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). This was the exact situation in Folk's case. Folk's 2255 motion claimed that the *Johnson* decision was applicable to the similarly worded residual clause of the Guidelines—an issue that was expressly before the Supreme Court in *Beckles*. Thus, the decision to stay Folk's 2255 motion in light of the pending *Beckles* decision was entirely appropriate, and would not have changed even if Attorney Wilson had opposed the government's motion to stay.

On the other hand, Folk may be arguing that Attorney Wilson should have opposed the stay because the issues before the Court in *Beckles* were irrelevant to many of the claims Folk wished to pursue. Specifically, it appears that Folk may be arguing that his prior convictions neither involved the residual clause of the Guidelines nor qualified as predicate crimes of violence. Therefore, as the argument may go, his classification as a career offender was erroneous regardless of whether the Guidelines' residual clause was deemed unconstitutional by

*Beckles*.  Under this line of reasoning, the court did not need to postpone the disposition of Folk's claims until *Beckles* was decided.

As we determined above, however, Folk was correctly classified as a career offender because two of his predicate convictions qualify as crimes of violence irrespective of the residual clause.  Therefore, to the extent that the stay of Folk's 2255 motion postponed consideration of the non-*Johnson* claims involving his career offender status, Folk was not prejudiced in any way.  Folk's inability to demonstrate prejudice means that he cannot succeed on his ineffectiveness claim.  *See Jacobs v. Horn,* 395 F.3d 92, 105 (3d Cir. 2005) (citing *Strickland v. Washington,* 466 U.S. 668, 692 (1984)) (explaining that defendant must show both deficient performance and prejudice to succeed on a Sixth Amendment ineffective-assistance claim).

In sum, none of the substantive claims within Folk's first three motions (Docs. 179, 180, & 183) has merit.  Consequently, these motions will be denied.

## B.   March 19, 2018 Motion to Amend

In Folk's difficult-to-decipher March 19, 2018 Motion to Amend, he raises four additional claims for post-conviction relief.  First, he contends that his trial counsel, Attorney Heidi Freese, was ineffective for failing to file pretrial motions to suppress certain evidence.  Second, Folk claims that Attorney Freese was ineffective for failing to request a medical continuance of various proceedings,

including Folk's trial and a pretrial hearing. Third, Folk appears to claim that Attorney Freese was ineffective for failing to properly investigate witnesses and challenge a superseding indictment that was filed on July 11, 2012, and that appellate counsel was ineffective for failing to raise these issues on appeal. Fourth, Folk asserts that Attorney Freese was ineffective for failing to move for a bill of particulars.

A Section 2255 movant can seek to amend his motion for relief pursuant to the Federal Rules of Civil Procedure. *See United States v. Thomas*, 221 F.3d 430, 434 (3d Cir. 2000) ("The Federal Rules of Civil Procedure apply to habeas corpus proceedings 'to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions.'" (quoting FED. R. CIV. P. 81(a)(2))); *see also* 28 U.S.C. § 2242 ("[Application for a writ of habeas corpus] may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). Under Federal Rule of Civil Procedure 15, if more than twenty-one days have elapsed after service of a pleading or service of a responsive pleading, a party may amend only with the opposing party's written consent or with leave of court. FED. R. CIV. P. 15(a)(1), (2). Leave to amend should be freely given by the court when justice so requires. FED. R. CIV. P. 15(a)(2).

A motion to amend, however, may not be used to circumvent the statute of limitations Congress provided in 28 U.S.C. § 2255(f). *United States v. Duffus*, 174 F.3d 333, 338 (3d Cir. 1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). Therefore, if a motion to amend, which raises new claims for relief, is filed outside of the one-year statute of limitations, the new claims must relate back under Federal Rule of Civil Procedure 15(c) to the timely filed claims or else they will be time-barred. *See Mayle v. Felix*, 545 U.S. 644, 662 (2005).

In the instant matter, Folk's judgment of conviction became final on October 5, 2015, when the Supreme Court denied his timely filed petition for a writ of certiorari. *See Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999). Thus, his deadline for raising post-conviction claims in a 2255 motion would have been October 5, 2016. 28 U.S.C. § 2255(f)(1). Folk's March 19, 2018 motion to amend, therefore, was filed well beyond the one-year statute of limitations, and any claims contained therein are time-barred unless they relate back under Federal Rule of Civil Procedure 15(c). *See Mayle*, 545 U.S. at 662-64.

In order for an amendment to relate back to an original pleading and thus be considered timely, the amendment must assert "a claim . . . that arose out of

the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B).  Consequently, to avoid being time-barred, any new claims raised in Folk's March 19, 2018 motion to amend must arise from same "conduct, transaction, or occurrence" or be "tied to a common core of operative facts" as those in his original 2255 motion.  *See Mayle*, 545 U.S. at 662-64.

Upon review of Folk's March 19, 2018 motion to amend, the only claim therein that could possibly relate back to his original 2255 motion is his claim that trial counsel was ineffective for failing to request a medical continuance of various proceedings.  In his original 2255 motion, Folk claimed that the trial court erred in failing to grant a medical continuance, and, therefore, we liberally construe the related claim in his March 19, 2018 motion to arise out of the same transaction or occurrence.  The three other claims Folk attempts to raise by amendment do not relate back to his original 2255 motion and thus are time-barred.  *Mayle*, 545 U.S. at 662; *Duffus*, 174 F.3d at 338.

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are governed by *Strickland v. Washington,* 466 U.S. 668 (1984).  The burden is on the defendant to prove such a claim.  *Strickland*, 466 U.S. at 687.

*Strickland* sets forth a two-prong test to assess ineffectiveness claims. First, counsel's performance must be deficient. *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005) (citing *Strickland*, 466 U.S. at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 689).

Second, counsel's deficient performance must have prejudiced the defendant. *Jacobs*, 395 F.3d at 105 (citing *Strickland*, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Shotts*, 724 F.3d at 375 (quoting *Strickland*, 466 U.S. at 694). A habeas court can forego an analysis of the *Strickland* performance prong if it finds that the defendant has failed to establish prejudice. *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 477 (3d Cir. 2017) (quoting *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008)).

Folk avers that shortly before his trial, he seriously injured his right knee, causing him to suffer excruciating pain prior to and during his trial. Folk's disjointed argument then strays into a different type of claim that seems to question the constitutionality of his plea agreement process. (*See* Doc. 184 at 6-8).

First, we reject as time-barred any type of plea agreement ineffectiveness claim, regardless of whether that claim invokes an impaired mental state due to a knee injury. Such a claim does not arise from the same transaction or occurrence, or same set of operative facts, as the due process medical-continuance claim raised in the original 2255 motion. Folk has never timely asserted any post-conviction ineffectiveness challenge to his rejection of a proffered plea deal, and he cannot do so now. *Mayle*, 545 U.S. at 662; *Duffus*, 174 F.3d at 338.

Second, as to the claim that Attorney Freese was ineffective for failing to move for a trial continuance, this contention also fails. Approximately one week before trial, Folk decided to represent himself. (*See generally* Docs. 63, 132). Judge Caldwell granted Folk's request to proceed *pro se* and appointed Attorney Freese to act as standby counsel. (Doc. 132 at 13, 20-21). During the pretrial hearing regarding the request to proceed *pro se*, Folk also moved to continue trial. (*Id.* at 13-19). This request for a continuance was completely unrelated to

his medical condition, and instead appears to have been based on Folk's desire for more time to prepare for trial. (*Id.*) Judge Caldwell denied that continuance request. (*Id.* at 19).

Folk does not explain how his trial attorney, whom he removed from representation, acted in a way that fell below Sixth Amendment constitutional standards. There is no record evidence that Folk asked Attorney Freese to move for a medical continuance or that a motion from counsel would have been any more effective than Folk's own motion during the pretrial hearing.

Furthermore, as to the second *Strickland* prong, Folk fails to provide any explanation regarding how the outcome of his trial likely would have been different if counsel had requested a medical continuance. The record reveals that Folk ably represented himself for the first part of his trial, and then chose to have standby counsel take over for the second half. (*See* Doc. 135 at 109-11). Folk has not shown how he was prejudiced in any way by the alleged ineffectiveness of Attorney Freese. In other words, Folk has not demonstrated that but for appointed counsel's alleged ineffectiveness in failing to move for a medical continuance, there is a "reasonable probability" that the result of his trial "would have been different." *Shotts*, 724 F.3d at 375 (quoting *Strickland*, 466 U.S. at 694).

Considering the foregoing, Folk's March 19, 2018 motion to amend will be denied. Three of the four claims raised therein are time-barred, and the other claim is meritless and thus amendment would be futile.

### C. Folk's "Motion Under Status Quo in Light of Motion's After Doc. 181 Clerical Error"

We next turn to Folk's "Motion Under Status Quo in Light of Motion's After Doc. 181 Clerical Error," which he filed on April 18, 2018. (Doc. 186). In this "motion," Folk does not raise any new substantive claims. Instead, it appears that he is merely inquiring as to the status of his other pending motions. Because we addressed all of those pending motions in the above discussion, Folk's April 18, 2018 motion for a status update will be dismissed as moot.

### D. Folk's Motion for an Order to Show Cause and Motion for Judgment on the Pleadings

Finally, we address Folk's Motion for an Order to Show Cause and his Motion for Judgment on the Pleadings. (Docs. 189, 190). These motions will be denied. In his show-cause request, Folk demands a response from the Government on his pending motions, but no Government response is required. We can, and have, addressed the outstanding motions in the foregoing discussion without need for government briefing.

Folk's motion for judgment on the pleadings is also meritless. Despite the Government's lack of response to the pending motions, we have determined that

no Government response is necessary.  That is because, even liberally construed, Folk's substantive motions lack merit and must be denied.  Consequently, Folk's motion for judgment on the pleadings is likewise denied.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Folk's pending motions (Docs. 179, 180, 183, 184, 186, 189, 190) will all be denied.  Folk will also be ordered to provide clarification regarding his most recent motion (Doc. 191).  An appropriate order will follow.